## CIRCUIT COURT OF HENRICO COUNTY

Carl Burrell

v.

Universal Ford Sales, Inc.,
and Harry L. Harris

October 10, 2013

Case No. CL13-225

BY JUDGE CATHERINE C. HAMMOND

This matter is before the Court following trial without a jury on July 30, 2013. The parties submitted memoranda following the trial. There follow my findings of fact and conclusions of law.

In 2011, Mr. Burrell was a successful automobile sales manager with thirty years experience. Mr. Burrell's former employer, Mr. Whitlock, owned a Lexus dealership managed by Mr. Burrell. Mr. Whitlow testified that Mr. Burrell was a "stellar" general manager and vice president, who was responsible for all operations and financing and produced a profit every year. Mr. Burrell earned $27,000 per month during the last year he worked with Mr. Whitlow.

Mr. Harris owned all of the stock in the defendant Ford dealership. Universal Ford was losing money throughout 2010 and 2011. Mr. Harris needed help, and he solicited Mr. Burrell. In September 2011, Mr. Harris told his attorney, Mr. Kelly, "I found the guy!" However, Mr. Burrell did not want to leave Lexus unless he could reach his goal of acquiring ownership in a dealership.

After discussion, Mr. Burrell and Mr. Harris agreed for Mr. Burrell to buy into the business and become a 40% owner. Mr. Harris asked his attorney to prepare a written agreement. The agreement would provide for Mr. Burrell to pay $100,000 at the beginning, in exchange for a 10% ownership interest. Over the next three years Mr. Burrell would receive an additional 10% per year, provided that the dealership produced a profit of $1 million per year. Because his ownership rights would be contingent

upon turning Universal Ford around, they agreed that Mr. Burrell would have authority to manage the business. As part of the consideration, Mr. Burrell accepted a salary of $14,500 per month.

On October 1, 2011, Mr. Burrell left Lexus and went to work at Universal Ford. No written agreement had been prepared or signed.

Conflicts arose within a short time. Mr. Harris wanted to change the terms of the deal. He thwarted many of Mr. Burrell's turn-around efforts. In the end, Mr. Harris reneged on his promises. Mr. Burrell did not contribute the initial $100,000. He resigned from employment in December 2011.

The Complaint asserts four claims: Count I: breach of contract, Count II: fraud, Count III: constructive fraud, and Count IV: equitable estoppel.

The statute of frauds bars plaintiff's claim for breach of contract. Va. Code § 11-2 bars action on an oral "promise, contract, agreement, representation, [or] assurance" if the contract is an "agreement that is not to be performed within a year. . . ." This transaction would have required more than a year to perform. There had to be a signed writing. *See Moorman v. Blackstock, Inc.*, 276 Va. 64 (2008).

I have considered carefully plaintiff's argument that either part performance or equitable estoppel defeats the statute of frauds defense. With respect to part performance, especially relevant is the case of *Reid v. Boyle*, 259 Va. 356 (2000), because it allowed an oral contract to buy into a business. However, the parties in *Reid* got much further along in performing their agreement. They essentially financed and built the amphitheater and only afterwards did the defendant deny the partnership. In the case at bar, the oral agreement was formed but not performed. With respect to the other argument, that Mr. Harris is equitably estopped from asserting the statute of frauds, the evidence would have to show in a "clear, precise, and unequivocal" manner that Mr. Harris falsely represented his willingness (or falsely concealed his unwillingness) to sell, before Mr. Burrell went to work at Universal Ford. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86 (1980). The evidence was not sufficient to meet this standard.

Counts II and III fail because claims for actual fraud and constructive fraud cannot rest on proof that an oral contract was not performed. To recover in tort and avoid the economic loss rule, plaintiff would have to prove the existence of a legal duty existing outside the duties derived from the oral contract. And, the evidence would have to show convincingly that Mr. Harris misrepresented from the beginning his then-present intent to repudiate, fraudulently inducing plaintiff to rely on the illusory promise of a future path to ownership. *Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350 (2010); *Lloyd v. Smith*, 150 Va. 132 (1928). I accept the testimony that Mr. Burrell left Lexus and moved to Universal Ford in reliance on Mr. Harris' promises. However, it is undisputed that both men expected

the agreement to be reduced to writing. *See Moorman v. Blackstock, Inc.,* 276 Va. 64 (2008). It is not clear what Mr. Harris' intentions were before October 1, 2011. Hence the requirement in law that the contract be in writing.

The fourth theory of liability is essentially based on the doctrine of promissory estoppel. Under that doctrine, Mr. Harris would be estopped by law from denying his promises; this is to prevent injustice to Mr. Burrell. Promissory estoppel is not recognized as a cause of action in Virginia. *Mongold v. Woods,* 278 Va. 196 (2009).

Judgment will be entered for the defendants.