R.R. by and through his father,
MR. R., Plaintiffs,

v.

FAIRFAX COUNTY SCHOOL BOARD,
et. al., Defendants.

No. CIV.A. 02–124–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 11, 2002.

Melanie D. Coates, Wilmer Cutler & Pickering, Tysons Corner, VA, for plaintiffs.

Thomas J. Cawley, Hunton & Williams, McLean, VA, Joan W. Murphy, Office of Atty. Gen., Richmond, VA, for defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Plaintiff R.R. is a learning-disabled minor child who has brought this action, by and through his father, plaintiff Mr. R., against the Fairfax County School Board, the Fairfax County Public Schools ("FCPS"), the Virginia Board of Education, and the Virginia Department of Education,[1] seeking relief under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et. seq.* (1999), from the dismissal of their request for a due process hearing. Specifically, plaintiffs seek a declaration that an adequate procedural safeguard notice under the IDEA must include notice of the time period in which the parents may request a due process hearing (Count I) and a declaration that their request for a due process hearing was timely made (Count II).

---

1. The Virginia Board of Education and the Virginia Department of Education are responsible for ensuring that the requirements of the IDEA are met in the Commonwealth of Virginia. 20 U.S.C. § 1412(a)(11) (1999).

On June 14, 2002, after hearing oral argument of the parties' cross motions for summary judgment, we found in favor of plaintiffs on their first cause of action. This opinion more fully articulates the reasons for that conclusion.

## I. FACTUAL FINDINGS

R.R. is a seven-year-old boy with autistic spectrum disorder. The FCPS first found R.R. eligible for special education services on October 9, 1997, and enrolled him in special education classes on November 4, 1997. R.R.'s specific program was "non-categorical," meaning that his classmates were children with various types of disabilities. After becoming dissatisfied with R.R.'s progress at his elementary school, Mr. R. began supplementing R.R.'s preschool program in February 1998, at his own expense, with one-on-one instruction through the Center for Autism and Related Disorders. R.R. continued in the FCPS program through the end of the 1997–1998 school year.

In June 1998, FCPS proposed an individualized education program ("IEP") for R.R.'s 1998–1999 school year. Mr. R. disagreed with the IEP because it essentially continued the same classroom-based, non-categorical program from the year before and offered only limited supplemental speech, language, and occupational instruction. He requested instead that the FCPS provide R.R. with intensive one-on-one training and other accommodations similar to the supplemental education R.R. had been receiving at the Center for Autism and Related Disorders. After the FCPS denied Mr. R.'s request for accommodation, he rejected the 1998 IEP by letter dated June 29, 1998.[2]

The FCPS responded to Mr. R.'s rejection of the 1998 IEP in a letter dated July 30, 1998. In that letter, Mr. R. was given the following notice of his right to appeal the FCPS's decision:

> You have the right to appeal the contents of the IEP. In order to appeal the IEP, you must notify Mary Shaughnessy, coordinator, Monitoring and Compliance, 10310 Layrton [sic] Hall Drive, Fairfax, VA, in writing, that you are initiating either an administrative review or an impartial due process hearing. The purpose of an administrative review is to mediate disagreements prior to initiation of the formal appeal procedure and is voluntary. In the meantime, placement in the special education program will continue as per your previously signed permission. A copy of *Procedural Safeguard and Parental Rights Pertaining to Special Education* [sic] is enclosed for your information.

Joint R. of Administrative Proceedings B, Ex. 1. Nowhere in the FCPS's letter, nor in the copy of the *Procedural Safeguards and Parental Rights Pertaining to Special Education, see id.* at H, Ex. 4 (*"Procedural Safeguards"*), was Mr. R. informed either of Virginia's two-year statute of limitations for requesting a due process hearing or of the time when the statute of limitations would begin to run.

By letter dated August 7, 1998, Mr. R. withdrew R.R. from the FCPS and advised that he intended to challenge the FCPS's decision regarding the 1998 IEP.[3] On August 28, 1998, the FCPS replied to Mr. R.'s letter by enclosing a second copy of the

---

**2.** Although this letter is not in the administrative record, we extrapolate its date and contents from the FCPS's July 30, 1998 letter to Mr. R., which refers to "the objections raised in your letter dated June 29, 1998." *See* Joint R. of Administrative Proceedings B, Ex. 1.

**3.** Specifically, Mr. R. wrote that "[w]e shall continue to pursue all appropriate and legal means at our disposal to seek the compliance of FCPS with the law with respect to our son's education." Joint R. of Administrative Proceedings B, Ex. 2.

*Procedural Safeguards* and reminding him that:

> [A]s you are aware, you also have the right to appeal the contents of the IEP either through an administrative review or an impartial due process hearing. To do this, you must notify Mary Shaughnessy, coordinator, Monitoring and Compliance, 10310 Layton Hall Drive, Fairfax, VA, in writing.

*Id.* at B, Ex. 3. It is undisputed that this second notice failed to inform Mr. R. either of Virginia's two-year statute of limitations for requesting a due process hearing or of the time when the statute of limitations would begin to run. Mr. R. withdrew R.R. from the FCPS and enrolled him in a private school program, for which Mr. R. has been paying tuition.

On January 29, 2001, more than two years after the above exchange of letters, Mr. R. requested an impartial due process hearing before a local hearing officer, to determine whether Mr. R. was entitled to reimbursement for R.R.'s tuition expenses. Shortly after the hearing was scheduled, the FCPS filed a Motion to Dismiss the due process proceeding, arguing that it was time-barred by Virginia's two-year statute of limitations. Plaintiffs opposed the Motion to Dismiss, arguing that the FCPS had never given them notice of either the two-year statute of limitations or the time from which the statute began to run. As a secondary argument, plaintiffs claimed that the two-year statute began to run from the date when Mr. R. fully paid R.R.'s 1998–1999 private school bill, and not from either the date when Mr. R. rejected the 1998 IEP or from the date when he withdrew R.R. from the FCPS.

On February 23, 2001, the local hearing officer granted the FCPS's Motion to Dismiss, finding that the plaintiffs had filed their request for the hearing outside the two-year statute of limitations. The officer also found that the FCPS was not required under either the IDEA or Fourth Circuit law to provide notice of the applicable statute of limitations. Lastly, he concluded that the statute of limitations began to run from either the date when Mr. R. rejected the IEP or the date when Mr. R. withdrew R.R. from the FCPS, because the injury or event forming the basis of the claim occurred upon those dates.

On January 25, 2002, plaintiffs timely filed a two-count complaint in this court, seeking declarations that an adequate procedural safeguard notice under the IDEA must include notice of the time period within which the parents may request a due process hearing and that plaintiffs' request for a due process hearing was timely.

## II. DISCUSSION

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Fourth Circuit has observed that actions under the IDEA "should typically be disposed of by motions for [summary] judgment." *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 385 n. 4 (4th Cir. 2000). Because the facts in the instant matter are undisputed, the purely legal issues presented are especially appropriate for resolution on summary judgment.

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). This goal is attained by gathering the parents, teachers, and local school officials together to create a written plan for the student's special education needs and goals, as well

as to determine the procedures by which these goals will be met. This plan, known as an individualized education program ("IEP"), is reviewed annually and revised when appropriate. 20 U.S.C. § 1401(11), § 1414(d)(4). When parents disagree with educational agencies about their child's IEP, the IDEA provides a mechanism through which they may seek a "due process" hearing before a local hearing officer and, if still aggrieved, file an original action contesting the result of the due process hearing in a federal court. *See* 20 U.S.C. §§ 1415(f)-(i). To ensure that children with disabilities and their parents are guaranteed procedural safeguards such as those discussed above, the IDEA requires state and local educational agencies to provide parents with "a full explanation" of the procedural safeguards available under the IDEA. 20 U.S.C. § 1415(d)(2)(J). The issue squarely before us is whether a "full explanation" of procedural safeguards includes notice of the limitations period for initiating a due process hearing. We hold that it does.

The IDEA itself does not prescribe a particular statute of limitations; rather, it borrows the statute of limitations from state law. *Manning v. Fairfax County Sch. Bd.*, 176 F.3d 235, 237–38 (4th Cir. 1999). As a result, from state to state, courts evaluating claims under the IDEA have applied statutes of limitations that range from as short as thirty days to as long as six years. *See, e.g., Cory D. v. Burke County Sch. Dist.*, 285 F.3d 1294 (11th Cir.2002) (applying Georgia's thirty-day statute of limitations for administrative actions to appeals under the IDEA); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir.2000) (applying Arkansas' three-year statute of limitations for general personal injury claims to causes of action under the IDEA); *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1194 (1st Cir.1994) (borrowing New Hampshire's catch-all six-year statute

of limitations to evaluate the timeliness of IDEA claims); *Patricia N. v. Lemahieu*, 141 F.Supp.2d 1243, 1250 (D.Haw.2001) (applying Hawaii's two-year personal injury statute of limitations to reimbursement claims under the IDEA). The parties do not dispute that in the Commonwealth of Virginia, the applicable statute of limitations is two years. *See* Va.Code § 8.01–248 (1995).

Relying on the text of the IDEA, the defendants argue that the IDEA imposes no obligation on educational agencies to notify parents of the applicable statute of limitations for requesting a due process hearing. *See* 20 U.S.C. § 1415(d); 34 C.F.R. 300.504(b). Although we have not found any court to have held explicitly that such notice is required, courts in jurisdictions where the applicable statute of limitations is short have held that the spirit of the IDEA requires that a proper procedural notice include notice of the applicable statute of limitations. *See, e.g., Powers v. Indiana Dep't of Educ.*, 61 F.3d 552, 559 (7th Cir.1995) (holding that the IDEA requires schools to give parents "clear notice" of the thirty-day limitations period); *Spiegler v. District of Columbia*, 866 F.2d 461, 467 (D.C.Cir.1989) (requiring that under a predecessor statute to the IDEA, the District of Columbia must give parents "clear notice" of the thirty-day statute of limitations for judicial review of a final administrative decision); *Scanlon v. San Francisco Unified Sch. Dist.*, 20 IDELR 1383, 1994 WL 860768 (N.D.Cal.1994) (holding that procedural notice under the IDEA requires notice of the thirty-day statute of limitations); *Hebert v. Manchester, N.H., Sch. Dist.*, 833 F.Supp. 80, 85 (D.N.H.1993) (defining procedural notice under IDEA as requiring specific notice of the thirty-day statute of limitations). Other courts have simply applied a longer statute of limitations. *See, e.g., Scokin v. Texas*, 723 F.2d 432, 438 (5th Cir.1984)

(extending Texas' statute of limitations for challenging the result of a due process hearing in district court from thirty days to two years).

The Fourth Circuit has yet to decide whether the IDEA requires that specific notice of the applicable statute of limitations period be given to parents, although its rulings suggest a concern that parents not lose their right to be heard because of an untimely filing. In 1987, for example, the Fourth Circuit changed the applicable statute of limitations in Virginia for cases under the Education for All Handicapped Children Act of 1995, the predecessor of the IDEA, from thirty days to one year, in order to "strike[ ] an appropriate balance between the need for speedy resolution of disputes and the need to ensure that parties have a fair opportunity to obtain judicial review of administrative due process proceedings." *Schimmel v. Spillane*, 819 F.2d 477, 483 (4th Cir.1987).[4] However, the *Schimmel* court declined to require state educational agencies to inform parents of the applicable limitations period because it observed that "it is not clear" whether educational agencies have a duty under the law to do so. *Schimmel*, 819 F.2d at 482. Nearly four years later, in *C.M. v. Board of Education*, the Fourth Circuit once again expressed its interest in protecting parents' rights to a due process hearing while expressly declining to resolve the question of whether the IDEA requires educational agencies to inform parents of the applicable limitations period. 241 F.3d 374, 382 n. 4 (4th Cir.2001). In *C.M.*, the Fourth Circuit found that North Carolina's sixty-day statute of limitations for IDEA claims, although short, was not inconsistent with the IDEA because "[i]t contains an explicit requirement that school authorities clearly and fully

notify parents of the limitations period." *Id.* at 383. In so ruling, the court observed that:

> The policy behind these detailed notice requirements is obvious. Congress wanted to eliminate the possibility that disabled children would lose their right to benefits or that parents would forfeit their role in their children's education because of ignorance of the Act and its procedural safeguards; hence, Congress placed the onus upon school authorities to inform parents of their IDEA rights.

*Id.* at 381.

■ Defendants argue that these cases should be limited to the holding that due process requires specific notice of a state's statute of limitations only when that statute is a short one. They go on to claim that Virginia's two-year statute of limitations is sufficiently long to avoid the need to require notice. We do not find that the onus imposed by Congress on educational agencies should be lightened simply because the statute of limitations in Virginia is two years long. We therefore hold that the full explanation of procedural safeguards required by the IDEA implicitly includes notice of a state's applicable statute of limitations period, regardless of the length of that period.

■ A primary purpose of the notice required by due process is to ensure that the opportunity to be heard is meaningful. *City of West Covina v. Perkins*, 525 U.S. 234, 240, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard." (*quoting Grannis v. Ordean*, 234 U.S. 385, 394, 34

---

4. After *Schimmel,* the one-year limitations period in Va.Code § 8.01–248 was extended to two years. 1995 Va. Acts ch. 9.

S.Ct. 779, 58 L.Ed. 1363 (1914))). The IDEA clearly incorporates this understanding of due process in its mandate to state educational agencies. It requires that agencies provide parents with "a full explanation" of the procedural safeguards available under the IDEA whenever the possibility arises that parents might want or need to invoke the protection of these safeguards. It directs agencies to repeatedly distribute copies of the safeguards to parents before making a decision that might affect a child's right to a free, appropriate public education. 20 U.S.C. § 1415(d)(1)(A)-(C) ("A copy of the procedural safeguards available to the parents of a child with a disability shall be given to parents, *at a minimum,* upon initial referral for evaluation; upon each notification of an [IEP] meeting and upon reevaluation of the child; and upon registration of a complaint under subsection (b)(6).") (emphases added). One of the safeguards itself requires further, detailed written notice to parents whenever an agency proposes or refuses to initiate or change the identification, evaluation, or placement of a child. *Id.* § 1415(b)(3), (c). The plain intent of Congress in drafting these provisions of the IDEA was to ensure that parents received clear notice of their rights, enabling them to participate more fully in a collaborative process with school authorities. *See CM,* 241 F.3d at 381 ("[T]hese rights were created to supply a simple and efficient method to encourage parental participation and facilitate parental enforcement of the IDEA.").

As the plaintiffs' case dramatically shows, the right to be heard is lost if parents fail to initiate a timely action. Not to warn parents clearly of the potential to lose their right to administrative review is completely contrary to the spirit of the IDEA, which identifies fully informed parents as necessary to the collaborative development of a child's IEP and requires states to ensure that parents are fully informed of their procedural rights. Indeed, our concern is not that two years is an inadequate time period within which to vindicate one's rights under the IDEA; *Manning* explicitly holds that a limitation period as short as one year suffices for this purpose. *Manning,* 176 F.3d at 239, *citing Schimmel,* 819 F.2d at 483. Rather, we are concerned that parents, confronted with a document that states it contains their "full procedural safeguards" under the IDEA, will be misled into reasonably believing that no additional procedural limitations restrict their right to request a due process hearing on behalf of their child.[5] By not providing notice of the applicable statute of limitations for requesting a due process hearing, while providing other important information, including the statute of limitations for filing an appeal from the due process hearing in federal court, the *Procedural Safeguards* foster the mistaken belief that no additional procedural limitations restrict a parent's right to request a due process hearing on behalf of his or her child. *Procedural Safeguards* at 9 ("Any party aggrieved by the findings and decision(s) made in a state administrative review has the right to bring a civil action in a state or federal court within one year of the decision.").

For the above-stated reasons, we find that the hearing officer erred in dismissing

---

**5.** Several states do mandate such notice. *E.g.,* N.C. Gen.Stat. § 150B–23(a) (1999) ("The time limitation ... shall commence when notice is given of the agency decision to all persons aggrieved ... [N]otice shall ... inform the persons of the right, the procedure, and the time limit to file a contested case petition."); N.H.Rev.Stat. § 186–C: 16–b III. (1992) ("Where the parent ... has not been given proper written notice ... including notice of the time limitations established in this section, [the limitations period] shall run from the time notice of those rights is properly given.").

plaintiffs' case as time-barred. Instead, the statute of limitations should have been equitably tolled to permit the plaintiffs' claims to go forward.[6] Therefore, summary judgment has been granted in favor of plaintiffs on Count I of their Complaint.

## ORDER

For the reasons stated in open court and amplified by the accompanying Memorandum Opinion, Plaintiffs' Motion for Summary Judgment, the Motion for Summary Judgment on Behalf of Defendants Virginia Board of Education and Virginia Department of Education, and Fairfax County School Board's Motion for Summary Judgment on the Administrative Record are all GRANTED IN PART and DENIED IN PART, and it is hereby

ORDERED that judgment be and is entered in favor of plaintiffs on Count I; and it is further

ORDERED that judgment be and is entered in favor of defendants on Count II; and it is further

ORDERED that the portion of the Hearing Officer's February 23, 2001 decision dismissing the plaintiffs' due process hearing as time-barred is REVERSED, and that this matter be and is REMANDED to the hearing officer for further proceedings consistent with this Order and the accompanying Memorandum Opinion.[1]

The Clerk is directed to enter judgment pursuant to Fed.R.Civ.P. 58 and to forward copies of this Order and the accompanying Memorandum Opinion to counsel of record.

---

**6.** In light of this ruling, plaintiffs' claim in Count II, that the statute of limitations started to run when they fully paid the bill for R.R.'s private schooling, is moot. However, the law is clear in this circuit that the statute of limitations begins to run when the parent knows of the injury or event that is the basis for the claim. *See Richards v. Fairfax County Sch. Bd.*, 798 F.Supp. 338, 341 (E.D.Va.1992). Plaintiffs knew of the injury or event that forms the basis of their claim at the latest by

August 7, 1998, which is the date when Mr. R. withdrew R.R. from the FCPS and expressed his intention to pursue a legal remedy for the FCPS's refusal to provide R.R. with a free and appropriate education under the IDEA.

**1.** Nothing in either this Order or the accompanying Memorandum Opinion is intended to suggest that the Court has any view as to the merits of plaintiffs' request for tuition reimbursement.